```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


JACQUELINE TRINIDAD,                   )
                                       )
     Plaintiff,                        )
                                       )    CIVIL ACTION NO.
v.                                     )    07-11679-DPW
                                       )
CITY OF BOSTON and                     )
MICHAEL LoPRIORE,                      )
                                       )
     Defendants.                       )
```

MEMORANDUM AND ORDER
March 15, 2011

Plaintiff Jacqueline Trinidad commenced this civil action randomly assigned to me against Michael LoPriore, a former Boston police officer, and the City of Boston (the "City") under 42 U.S.C. § 1983 and Mass. Gen. Laws ch. 258, § 1 *et seq.* Trinidad alleges that LoPriore, acting under color of law, violated her civil rights by forcing her to perform sexual acts. In a separate criminal case also randomly assigned to me, I had earlier sentenced LoPriore after he pled guilty for this conduct. *United States v. LoPriore*, No. 06-cr-10301, Judgment (D. Mass. Mar. 13, 2007).

LoPriore failed to appear in any capacity during the litigation of the civil case and he was defaulted. However, despite repeated orders to do so by dates certain, Trinidad's counsel failed to file a motion for default judgment requesting and supporting a damage amount. The time for making such a

filing having long past, I entered a nominal default judgment against LoPriore in the amount of $1.00 while granting summary judgment to the City of Boston. *Trinidad v. City of Boston*, No. 07-11679-DPW, 2010 WL 2817186, at *1 (D. Mass. July 16, 2010). Trinidad now seeks to amend that judgment to permit a more generous and tailored damages award against LoPriore. Because it would create a manifest injustice to Trinidad were I not to do so, I will amend the judgment and award Trinidad $200,000 in compensatory damages.

## I. BACKGROUND

This action arises out of a series of incidents in late 2004 during which LoPriore forced Trinidad to perform sex acts on him.[1] At the time, LoPriore was an officer in the Boston Police Department restricted to administrative duty and prohibited from working in the field. The nineteen-year-old Trinidad was working as a call girl and prostitute, often in the Chinatown area of downtown Boston. She had been prostituting herself on and off since the age of thirteen and had been in and out of foster care until reaching the age of majority.

Trinidad's interaction with LoPriore began one night after LoPriore trailed her and a regular client from Chinatown to

---

[1] A more extensive history of the litigation is set forth in my previous Memorandum and Order granting the City of Boston's motion for summary judgment and entering default judgment against LoPriore. *See Trinidad*, 2010 WL 2817186, at *1-3, 5-6.

Quincy, where LoPriore rapped on the vehicle's window, flashed his badge at the two, and ultimately sent the client away. Although she was suspicious of him because he was out of uniform and outside of his police district, and the situation was very different from prior undercover prostitution busts Trinidad had experienced, she was scared because LoPriore had flashed a badge and threatened to arrest her. After forcing her into the front seat of his personal car, he asked her, "how much is a police officer's discount?" Trinidad, believing him to be joking, replied "$40." He then said, "no, nothing or you are getting booked," and hit her head against the dashboard. He then forced her to perform oral sex on him.

Some days later, LoPriore found Trinidad working the same area of Chinatown, flashed his badge, and told her, "you know the deal." She again performed oral sex on him. Several days following the second incident, LoPriore again stopped Trinidad in Chinatown and flashed his badge. While she was performing oral sex on LoPriore, she grabbed his wallet - which contained his police badge - from the dashboard and put it in her purse. After she left LoPriore, she returned to where her boss and the other girls she worked with were located and gave the badge to her cousin. Soon thereafter, LoPriore returned, looking for Trinidad and his badge. He forced Trinidad to dump her purse out and, after rifling through her belongings, took approximately $1,000

from her.  However, not finding the badge, he departed.  The
following day, LoPriore began calling Trinidad's mobile phone,
asking, while threatening her with harsh consequences, to return
the badge and wallet.

Eventually, Trinidad gave the badge to John Swomley, one of
her attorneys in this matter, who turned it over to the Federal
Bureau of Investigation ("FBI").  The FBI investigated LoPriore,
who was ultimately charged in a one-count information with the
misdemeanor deprivation of rights under color of law in violation
of 18 U.S.C. § 242.  *See United States v. LoPriore*, No. 06-cr-
10301.  On March 13, 2007, I entered judgment against LoPriore
and sentenced him to twelve months incarceration, the maximum
penalty permissible for the misdemeanor.  Thereafter, on
September 7, 2007, Trinidad filed this § 1983 action against the
City, alleging that the City failed to supervise and discipline
LoPriore adequately in light of previous complaints against him.
Trinidad later amended her complaint twice, first to include a
§ 1983 claim against LoPriore and then to include state tort
claims against the City.

Although the City defended this civil litigation vigorously
from its inception, LoPriore never responded to the complaint or
summons, never appeared in court, and never filed any document in
this matter.  Consequently, I issued a notice of default on
September 10, 2008.  *Trinidad v. City of Boston*, No. 07-11679,

Notice of Default (D. Mass. Sept. 10, 2008). On the same date, I instructed my deputy clerk to issue my standing order regarding the proper submissions and format required in a motion for default judgment. On November 24, 2008, I agreed to defer the question of damages as to LoPriore until the suit against the City had progressed. (*See* Electronic Clerk's Notes, Nov. 24, 2008.) However, on May 5, 2009, I issued an electronic order setting the remaining pretrial schedule: "Remaining Fact Discovery shall be completed by 5/15/2009; *a Motion for Default Judgment against Michael Lopriore is due by 5/19/2009*; Dispositive Motions are due by 6/26/2009 . . . ." (Electronic Order, May 5, 2009 (emphasis added).) Despite the order, Trinidad's attorneys failed to file a motion for default judgment against LoPriore. After a colloquy with counsel regarding the missed deadline, I agreed to defer consideration of damages against LoPriore until dispositive motions had been filed by the City. Accordingly, at the June 16, 2010, hearing on the motions for summary judgment, I again ordered Trinidad's counsel to file a motion for default judgment, this time by no later than July 9, 2010. (Electronic Clerk's Notes, June 16, 2010.) Despite this repeated prompting, Trinidad's counsel failed to file any default judgment submission and I was "left, through counsel's neglect to bring this case to judgment by simply assessing nominal damages of $1.00." *Trinidad*, 2010 WL 2817186, at *15.

Trinidad's lead co-counsel, John Swomley and Jessica Hedges, now ask me to overlook what they describe as their "unfortunate oversight" and internal "miscommunication" and amend the judgment. They seek $500,000 in compensatory damages and $250,000 in punitive damages.

## II. ANALYSIS

**A. Motion to Amend the Judgment**

Under Federal Rule of Civil Procedure 59(e), "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Rule 59(e) provides no express elaboration regarding the proper grounds for granting such a motion or even which judgments are susceptible to amendment by Rule 59(e). However, the First Circuit has determined that Rule 59(e) generally "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Crawford v. Clarke*, 578 F.3d 39, 44 (1st Cir. 2009) (citation and internal quotation marks omitted). Thus, a Rule 59(e) motion does not provide a second-chance for litigation, but rather aims to correct an error by the court without the additional burden of initiating appellate review. *See Aybar v. Crispin-Reyes*, 118 F.3d 10, 16 (1st Cir. 1997) ("Rule 59(e) allows a party to direct the district court's attention to newly

discovered material evidence or a manifest error of law or fact and enables the court to correct its own errors and thus avoid unnecessary appellate procedures." (citation omitted)). Consequently, for example, a pretrial order "can be modified [under Rule 59(e)] only to prevent manifest injustice." *Rodriguez-García v. Miranda-Marín*, 610 F.3d 756, 774 (1st Cir. 2010) (citation and internal quotation marks omitted).

The First Circuit has held that, ordinarily, "Rule 59(e) motions are granted only where the movant shows a manifest error of law or newly discovered evidence." *Kansky v. Coca-Cola Bottling Co. of New Eng.*, 492 F.3d 54, 60 (1st Cir. 2007); *see also Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005) ("The general rule in this circuit is that the moving party must 'either clearly establish a manifest error of law or must present newly discovered evidence.'" (quoting *Pomerleau v. W. Springfield Pub. Schs.*, 362 F.3d 143, 146 n.2 (1st Cir. 2004))). The basis on which Trinidad requests amendment here is that it would be a manifest injustice for her not to receive a judgment to which she is entitled simply because of her attorneys' failure to make a timely submission in support of a default judgment due to "inadvertence" and "miscommunication." Trinidad presents no newly discovered evidence, nor does she argue that I based *my* judgment on a manifest error of law.

Instead, Trinidad argues that I should grant her motion to amend in order to prevent a manifest injustice. The First Circuit has not expressly recognized this ground for granting a Rule 59(e) motion, although it has cited, without discussion, to Wright *et al.*, Federal Practice & Procedure § 2810.1, which states that "[t]here are four basic grounds upon which a Rule 59(e) motion may be granted," including "to correct manifest errors of law or fact," to "present newly discovered or previously unavailable evidence," "to prevent manifest injustice,"[2] and to address "an intervening change in controlling law." *See Marie*, 402 F.2d at 7 n.2. The majority of courts outside of the First Circuit recognize all four grounds. *See, e.g.*, *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (*per curiam*); *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *GenCorp, Inc. v. Am. Int'l Underwriters*, 178

---

[2] In this connection, Wright *et al.* contend that "[s]erious misconduct of counsel may justify relief under this theory." Wright *et al.*, Federal Practice & Procedure § 2810.1. However, the supporting citation for this contention, *Dale & Selby Superette & Deli v. Dep't of Agric.*, 838 F. Supp. 1346 (D. Minn. 1993), involved the failure to submit evidence at trial and resulted in the denial of the Rule 59 motion. The reference to "serious misconduct" appears to have been directed at misconduct by opposing counsel that might justify a new trial. Wright *et al*, Federal Practice & Procedure § 2809. As a general matter, a new trial is not appropriate for complaints regarding a less-than-successful, subcompetent performance by a party's own counsel. *William v. City of Newburgh*, 830 F. Supp. 770, 773 (S.D.N.Y. 1993). As the court in *Dale & Selby* observed, a Rule 59 motion "is not intended to routinely give litigants a second bite at the apple, but to afford an opportunity for relief in extraordinary circumstances." 838 F. Supp. at 1348.

F.3d 804, 834 (6th Cir. 1999). Several district courts in this circuit have recognized that manifest injustice is a rare but appropriate grounds for relief under Rule 59(e), but have not considered motions relying on that particular ground. *See, e.g.*, *United States ex rel. Montano v. Morales Ramírez*, 733 F. Supp. 2d 336, 336 (D.P.R. 2010) (citing parenthetical citation in *Marie*, 402 F.3d at 7 n.2); *Nw. Bypass Grp. v. U.S. Army Corps of Eng'rs*, 490 F. Supp. 2d 184, 187 (D.N.H. 2007); *Storie v. Household Int'l, Inc.*, No. 03-40268-FDS, 2005 WL 3728718, at *3 (D. Mass. Sept. 22, 2005).

As I noted in my previous memorandum in this case, counsel's concerted inattention — in this instance, twice failing to file submissions for a default judgment despite specific deadlines, ordered by this Court, within which to do so — provided me with no basis from which to determine Trinidad's damages.[3] *Trinidad*,

---

[3] Trinidad's co-counsel blame each other for missing the two deadlines posted on the electronic docket that I set for filing a motion for default judgment. Hedges states that she relied upon my November 24, 2008, statement that I would defer considering damages until the case against the City was resolved. (Hedges Aff. ¶¶ 5-8.) Although I did agree to defer consideration, I later explicitly ordered the filing of a motion for default judgments first on May 5, 2009, when I set the schedule for the filing of dispositive motions, and again during the hearing on the City's motion for summary judgment. Hedges also states that she had not been monitoring the docket because she believed that Swomley's firm was doing so. (Hedges Aff. ¶ 7.) Swomley, for his part, claims he assumed that Hedges's firm had taken on that role. (Swomley Aff. ¶¶ 3-4.) Even if the apparent inability of the attorneys to communicate on the most basic of case management responsibilities were to be accepted as an explanation, there was no excuse for the failure of Swomley and Hedges to keep current

9

2010 WL 2817186, at *15.  I was therefore constrained to award only nominal damages.  I agree with Trinidad that she should not bear the burden of her attorney's deficiencies.  Nor should LoPriore reap the benefit.  Such an outcome would indeed work a manifest injustice.  Consequently, I am satisfied that this is a rare and extraordinary instance in which amendment of the judgment is appropriate.

I recognize that the First Circuit case law on Rule 59(e) raises some doubt as to whether I may grant plaintiff's motion to alter a default judgment.  In *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183 (1st Cir. 2004), the court expressly declined to determine whether it is permissible to challenge a default judgment under Rule 59(e), noting that at least one appellate court has found that Federal Rule of Procedure 60(b) is "the exclusive method for attacking a default judgment."  370 F.3d at 188 (citing *Gulf Coast Fans, Inc. v. Midwest Elec. Imps., Inc.*, 740 F.2d 1499, 1507 (11th Cir. 1984) (holding that Federal Rule of Civil Procedure 55(c) requires a party seeking to set

---

regarding a docket which plainly reflected orders to make default judgment submissions.  This is particularly so when attorneys affiliated with the two principal co-counsel firms made numerous filings electronically after May 5, 2009.  Indeed, Hedges's colleague Michael Tumposky was physically present at the June 16, 2010, motion hearing at which I set the most recent default judgment submissions deadline.

aside a default judgment to do so under Rule 60(b))).[4]  However, that decision addressed the *defaulted* party's attempt to *set aside* the default judgment, not, as here, the non-defaulting party's attempt to amend the default judgment award with no opposition from the defaulted party.  Similarly, the First Circuit's hesitance in *Venegas-Hernandez* may stem from the fact that it was the defaulted party, appearing for the first time, who filed the Rule 59(e) motion to lessen the damages awarded.  However, when the *non-defaulting* party seeks to alter the judgment, such a party does not seek to set aside that judgment, but rather to *amend* it without resorting to appeal, which appears to be a procedure more consistent with the objectives of Rule 59(e) than of Rule 60(b).

Although the First Circuit declined to resolve this issue in *Venegas-Hernandez*, the court did provide considerable discussion regarding how a district court might address a motion for amendment of a default judgment, "assuming *arguendo* Rule 59(e) can be used for amendment of default judgments."  *Id*. at 190.  The court emphasized that "district courts have considerable discretion in deciding whether to grant or deny a motion to alter or amend under Rule 59(e)," and, in making that determination, those courts must "balance[e] the need for finality of judgments

---

[4] Rule 55(c) states: "The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)."

with the need to render a just decision." *Id.* at 190-91. The court recognized that "[f]inality plays a slightly different role in the default context," and went on to find that, "[a]ssuming Rule 59(e) is available at all, we think it is clear that the default context is something that a district court can consider in exercising its discretion." *Id.* at 191. The court further indicated that the "'raise-it-or-waive-it' rule may not always make sense when applied to a default judgment." *Id.* at 190. Ultimately, however, the court affirmed the district court's amendment of the motion only "insofar as we hold that the original damages calculation was based on a manifest error of law." *Id.* at 194.

Following the First Circuit's instruction regarding how a district court *might* address a Rule 59(e) motion to amend a default judgment, were such a procedure permissible, I conclude amendment would be appropriate here in order to avoid an unjust result. Furthermore, because LoPriore has declined to participate in this case, concerns regarding modest adjustments to the finality of the judgment favor Trinidad. In any event, as the *Venegas-Hernandez* court recognized, the Fifth and Seventh Circuits have held that "a Rule 59(e) motion is indeed a valid mechanism for attacking a default judgment, in addition to the mechanism of Rule 60(b)." *Id.* at 190 (citing *United States v. One 1988 Dodge Pickup*, 959 F.3d 37, 40 (5th Cir. 1992), and

12

*Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 876 (7th Cir. 1988)).

I am satisfied that amendment of the default judgment in this case under Rule 59(e) is appropriate and necessary to avoid a manifest injustice created by the inattentiveness exhibited by Trinidad's counsel. I will accordingly grant the motion to amend the judgment.

**B. Damages**

    **1. Compensatory Damages**

Trinidad now seeks $500,000 in compensatory damages and $250,000 in punitive damages. In support of compensatory damages, Trinidad argues that she suffered severe physical and emotional trauma both during and after the incidents, that she was scared and anxious because she thought LoPriore was following her, and that she did not feel safe reporting LoPriore to the police. After the incidents, she became paranoid and anxious, began therapy, was diagnosed with post-traumatic stress disorder, and was prescribed medication for anxiety. She left Massachusetts to get away from LoPriore and is fearful of returning, even though she would like to live with her family. She also states that she has begun cutting herself due to her anxiety and continues to speak with a counselor regularly.

There is no doubt that LoPriore's actions caused Trinidad significant emotional and mental distress. Although Trinidad's

13

chosen occupation exposed her more than most women to sexual assault, LoPriore took advantage of her vulnerable position and forced her to engage in sexual acts without consent.  Whatever her customary profession, she is entitled to personal autonomy about the choice of persons as clients and her manner of interaction with them.  LoPriore not only forced Trinidad to engage in involuntary acts but he stalked her over a period of time and used his badge in an attempt to shield himself from the consequences of his actions.  To be sure, Trinidad's medical history complicates any determination of compensatory damages in this case.  She came from a difficult and abbreviated childhood and has worked as a call girl under the direction of various men since the age of thirteen.  She has a documented history of mental health problems and treatment that both pre- and post-date LoPriore's assaults.  She provides no proof of out-of-pocket expenses, but rather seeks compensation solely for emotional distress.  Emotional distress, of course, is undisputedly compensable, see *Carey v. Piphus*, 435 U.S. 247, 264 (1978); it is also inherently difficult to value.

In requesting $500,000, Trinidad points to news reports of a number of judgments awarded to victims of sexual assault and rape for comparison.  The cited awards include a number of multi-million dollar jury awards from various state and federal courts, a range of settlement awards, and an award of $750,000 by the

14

North Carolina Industrial Commission. The cases primarily involve minor, elderly, and mentally disabled victims whose attackers were not law enforcement officers. Where the underlying facts are available, therefore, they demonstrate that the cases are not comparable to Trinidad's and, as such, are not useful guideposts for determining the damages appropriate here.

There are few comparable cases within the federal system. Courts awarding compensatory damages for — usually multi-incident — sexual assault and rape of inmates or detainees by prison guards and corrections officers have ranged from $100,000 to $500,000.[5] There are also a handful of cases that involve a single incident of rape or sexual assault by an on-duty, uniformed law enforcement officer who preyed upon his victim by either effectuating a traffic stop, offering a ride to a lone

---

[5] *See, e.g.*, *Daskalea v. District of Columbia*, 227 F.3d 433 (D.C. Cir. 2000) (affirming a $350,000 jury award against the District of Columbia and its Department of Corrections for ongoing sexual abuse of a female inmate in light of a documented history of routine sexual abuse of women prisoners); *Mathie v. Fries*, 121 F.3d 808 (2d Cir. 1997) (affirming an award of $250,000 in compensatory damages for the sodomy-rape of a pretrial detainee by a guard); *Ortiz v. Lasker*, No. 08-cv-6001L, 2010 WL 3476017 (W.D.N.Y. Aug. 30, 2010) (entering default judgment of $250,000 compensatory and $250,000 punitive damages against a corrections officer who physically and sexually abused an inmate); *Cash v. County of Erie*, No. 04-cv-0182-JTC(JJM), 2009 WL 3199558 (W.D.N.Y. Sept. 30, 2009) (entering default judgment of $500,000 compensatory and $150,000 punitive damages against a detention center guard who assaulted and raped an inmate); *Hall v. Terrell*, 648 F. Supp. 2d 1229 (D. Colo. 2009) (entering default judgment of $354,070.41 in compensatory and $1 million in punitive damages against an officer who routinely sexually assaulted and raped an inmate in his custody).

woman, or taking advantage of a woman who sought the officer's assistance.[6] These cases generally resulted in lesser damage awards, ranging from $50,000 to $350,000, than those sexual assaults and rapes that took place in the custodial context. I can find no cases involving a repeated sexual assault by an officer on a victim, like Trinidad, otherwise engaged in the sex trade with a similar history of preexisting mental and emotional distress. Taking into account Trinidad's evident past and ongoing emotional and mental suffering caused by LoPriore, the repeated and predatory nature of LoPriore's sexual assaults and subsequent harassment, and the comparable cases, I am satisfied that $200,000 is appropriate compensation in this case.

---

[6]*See Lewis v. Pugh*, 289 F. App'x 767 (5th Cir. 2008) (*per curiam*) (affirming a jury verdict of $50,000 in compensatory and $250,000 in punitive damages against an officer who offered a woman a ride home and then took her to an abandoned trailer and raped her); *Hyde v. Nicholas*, 32 F. App'x 127 (5th Cir. 2002) (affirming a default judgment of $50,000 in compensatory damages against an on-duty officer who sexually assaulted a woman); *Parrish v. Luckie*, 963 F.2d 201 (8th Cir. 1992) (affirming a jury award of $150,000 against an officer in his individual capacity who falsely arrested a female passenger in a stolen vehicle, drove her to a secluded area, and forced her to perform oral sex); *Campbell v. Graham*, No. 3:-6-cv-444, 2010 WL 2901826 (E.D. Tenn. July 21, 2010) (awarding a default judgment of $25,000 in compensatory and $25,000 in punitive damages against an officer who responded to a domestic disturbance and raped the woman while transporting her to her father's); *Mize v. Tedford*, No. 08-cv-10660-DT, 2009 WL 1508375 (E.D. Mich. May 29, 2010) (awarding default judgment of $350,000 against on-duty officer who took a woman to a police building, placed his gun beside her, and raped her).

### 2. Punitive Damages

Trinidad also seeks punitive damages in the amount of $250,000. While punitive damages are available in § 1983 actions, they are "not favored in the law and are allowed only with caution and within normal limits." *Powell v. Alexander*, 391 F.3d 1, 15 (1st Cir. 2004) (quoting *McKinnon v. Kwong Wah Rest.*, 83 F.3d 498, 508 (1st Cir. 1996)). Plaintiffs have "no vested right to punitive damages," as such awards are made "as a matter of public policy to punish outrageous conduct by the defendant or to deter similar conduct in the future." *Id.*

Although LoPriore's actions were indisputably reprehensible, I am satisfied that LoPriore has received punishment for his actions through the customary societal mechanism: criminal prosecution. LoPriore pled guilty to a misdemeanor charge of deprivation of rights under color of law, and was sentenced to one year incarceration. This was the maximum sentence permissible for that charge. LoPriore's conviction and sentence serve the traditional punitive public policy and deterrence objectives for sanctioning his conduct. While, if I were vested with the executive's charging authority, I might view a felony charge more appropriate, there was nothing irregular in the public criminal process. Consequently, I am satisfied that no additional punitive damages through a private civil process are warranted.

### III. CONCLUSION

For the reasons set out more fully above, the motion to amend the judgment (Doc. No. 92) is GRANTED.  Accordingly, I ORDER the clerk to enter an amended default judgment for the plaintiff in the amount of $200,000.  Given the inattention of counsel to the deadlines in this case, however, I decline to order pre-judgment interest.


                                **/s/ Douglas P. Woodlock**
                                DOUGLAS P. WOODLOCK
                                UNITED STATES DISTRICT JUDGE